

FILED

JUN 2 2 2022

RORY L. PER Y II, CLERK
U.S. District Court
Southern District of West Virginia

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON**

**UNITED STATES OF AMERICA**

**v.**                                        **CRIMINAL NO.** 2:22-cr-00122

                                             **18 U.S.C. § 1343**

**ALEXIS RANSOM**

# I N F O R M A T I O N

The United States Attorney Charges:

## COUNT ONE

### The Scheme to Defraud

1.      From on or about April 2, 2021, through on or about August 16, 2021, at or near

Logan, Logan County, West Virginia, and within the Southern District of West Virginia, defendant

ALEXIS RANSOM, acting with the intent to defraud, did knowingly devise and intend to devise

a scheme and artifice to defraud the Small Business Administration ("SBA") and a commercial

lending institution (the "Lender"), and to obtain money and property from the SBA and the Lender

by means of materially false and fraudulent pretenses, representations, and promises.

2.      It was the purpose of the scheme to defraud for defendant ALEXIS RANSOM to

unjustly enrich herself by fraudulently obtaining loan proceeds through the Paycheck Protection

Program ("PPP"), a federal program that provided emergency financial assistance to the millions

of American who were suffering the economic effects caused by the COVID-19 pandemic.

Background

At all times material to this Information:

3.      Defendant ALEXIS RANSOM was a resident of Logan, Logan County, West Virginia, within the Southern District of West Virginia. She claimed to own, as the sole proprietor, a business called Alexis Renae Ransom, which she purported did business under the tradenames of Renae's Fashion Consulting LLC and Momma & Me Boutique.

4.      The SBA was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses, and by assisting in the economic recovery of communities after disasters.

5.      As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

6.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020, and designed to provide emergency financial assistance to the millions of American who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

7.      The PPP allowed qualifying small businesses and other organizations to receive PPP loans. Businesses were required to use PPP loan proceeds to cover payroll costs, interest on mortgages, rent and utilities. The PPP allowed interest and principal on the PPP loans to be entirely

forgiven if the businesses spent the loan proceeds to cover these expenses within a designated time, and used a certain specified percentage of the PPP loan proceeds on payroll expenses.

8.      To obtain a PPP loan, a qualifying business was required to submit a PPP loan application. The PPP loan application required the small business (through its authorized representative) to acknowledge the program rules and make affirmative certifications that the small business was eligible to obtain the PPP loan. In addition, businesses applying for a PPP loan were required to provide documentation showing their prior gross income from either 2019 or 2020. Applicants also had to certify that the small business was in operation on February 15, 2020.

9.      A PPP loan application was required to be processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

10.      The Lender was a non-bank direct commercial lender that specialized in small business lending. The Lender was a non-bank PPP lender to small businesses. The Lender processed PPP loans nationwide and was headquartered in California. The Lender used a bank located in California to transfer the loan proceeds to small businesses via Automated Clearing House (ACH) deposits.

11.      Defendant ALEXIS RANSOM maintained multiple personal bank accounts at two banks located in Logan, Logan County, West Virginia.  Both banks had numerous branch offices throughout West Virginia and were financial institution as defined by 18 U.S.C. § 20.

Manner and Means for Carrying Out the Scheme

12.      In the spring of 2021, defendant ALEXIS RANSOM applied for two PPP loans for Alexis Renae Ransom, which she purported did business under the tradename of Renae's Fashion Consulting LLC, even though Renae's Fashion Consulting LLC was not eligible for the PPP loans.

13.     In the summer of 2021, defendant ALEXIS RANSOM applied for a third PPP loan for Alexis Renae Ransom, which she purported did business under the tradename of Momma & Me Boutique, even though Momma & Me Boutique was not a legitimate business nor eligible for the PPP loan.

14.     Renae's Fashion Consulting LLC had not engaged in substantial, legitimate business activity on or before February 15, 2020, nor had it generated $66,900 in gross income during 2019 or 2020.

15.     Momma & Me Boutique had not engaged in substantial, legitimate business activity on or before February 15, 2020, nor had it generated $69,000 in gross income during 2019.

16.     In the beginning of April 2021, defendant ALEXIS RANSOM submitted and caused the submission of an application to the SBA on behalf of Renae's Fashion Consulting LLC for a PPP loan in the amount of $13,937.50. The loan application listed defendant ALEXIS RANSOM as the owner of Renae's Fashion Consulting LLC.

17.     On the PPP loan application, defendant ALEXIS RANSOM falsely represented that Renae's Fashion Consulting LLC had received $66,900 in gross income in 2020. Defendant ALEXIS RANSOM also falsely stated that Renae's Fashion Consulting LLC was established in 2019 and in operation on February 15, 2020.

18.     Defendant ALEXIS RANSOM also submitted a false IRS Form 1040, Schedule C for the Profit or Loss from a Business ("Form 1040"), for the year 2020 as part of her PPP loan application.

19.     The Form 1040 again falsely stated that Renae's Fashion Consulting LLC had earned $66,900 in gross income 2020.

20.     A few days later, Renae's Fashion Consulting LLC's PPP loan application was approved. Defendant ALEXIS RANSOM signed the note to the SBA as the owner of Renae's Fashion Consulting LLC.

21.     On or about April 16, 2021, the Lender sent $13,937.50 in PPP loan proceeds via an ACH transfer that originated in California and was deposited into defendant ALEXIS RANSOM's personal bank account in Logan, West Virginia.

22.     Approximately two weeks later, defendant ALEXIS RANSOM, on behalf of Renae's Fashion Consulting LLC, applied for a second PPP loan with the Lender.

23.     On the second PPP loan application, defendant ALEXIS RANSOM again used the false information that she provided the Lender on her first PPP loan, including the false representations that Renae's Fashion Consulting LLC was established in 2019, and was in operation on February 15, 2020. Defendant ALEXIS RANSOM also falsely represented that Renae's Fashion Consulting LLC earned $66,900 in gross income in 2019.

24.     Renae's Fashion Consulting LLC's second PPP loan application was approved during the end of April 2021. Defendant ALEXIS RANSOM signed the note to the SBA as the owner of Renae's Fashion Consulting LLC.

25.     On or about May 4, 2021, the Lender sent $13,937.50 in PPP loan proceeds via an ACH transfer that originated in California into defendant ALEXIS RANSOM's personal bank account in Logan, West Virginia.

26.     Approximately one month later, defendant ALEXIS RANSOM applied for a third PPP loan with the Lender on behalf of Momma & Me Boutique.

27.     At the end of May 2021, defendant ALEXIS RANSOM submitted and caused the submission of an application to the SBA on behalf of Momma & Me Boutique for a PPP loan in

the amount of $14,375.00. The loan application listed defendant ALEXIS RANSOM as the owner of Momma & Me Boutique.

28.     On the PPP loan application, defendant ALEXIS RANSOM falsely represented that the Momma & Me Boutique received $69,000 in gross income in 2020. Defendant ALEXIS RANSOM also falsely stated that Momma & Me Boutique was established in 2019 and in operation on February 15, 2020.

29.     Defendant ALEXIS RANSOM also submitted a false Form 1040 for the year 2019 as part of her PPP loan application that was purportedly for the Momma and Me Boutique.

30.     The Form 1040 again falsely stated that the Momma & Me Boutique had earned $69,000 in gross income 2019.

31.     A few days later, Momma & Me Boutique's PPP loan application was approved. Defendant ALEXIS RANSOM signed the note to the SBA as the owner of Momma & Me Boutique.

32.     On or about June 8, 2021, the Lender sent $14,375.00 in PPP loan proceeds via an ACH transfer that originated in California and was deposited into defendant ALEXIS RANSOM's personal bank account in Logan, West Virginia.

33.     A few months later, defendant ALEXIS RANSOM on behalf of Alexis Renae Ransom, Renae Fashion Consulting LLC and Momma & Me Boutique applied to have the three PPP loans forgiven even though the loan proceeds had not been used on permissible business expenses as required by the terms of the PPP loans.

34.     All three of defendant ALEXIS RANSOM's PPP loans obtained on behalf of Alexis Renae Ransom, Renae Fashion Consulting LLC, and Momma & Me Boutique were forgiven on or about August 16, 2021.

35.     In this manner, from on or about March 27, 2021, through on or about August 16, 2021, defendant ALEXIS RANSOM defrauded the Lender and SBA out of approximately $42,250.00.

<u>Wire Transmissions to Execute the Scheme to Defraud</u>

36.     On or about June 8, 2021, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia and elsewhere, defendant ALEXIS RANSOM having devised and intending to devise the above-described scheme and artifice to defraud the SBA and the Lender, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did knowingly transmit and caused to be transmitted by means of wire and radio communications in interstate commerce any writings, signs, signals, pictures, and sounds that is an ACH deposit of $14,375.00 from the Lender in California to her personal bank account in Logan, West Virginia.

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE

1.      The allegations contained in this Information are hereby re-alleged and incorporated by reference for the purpose of giving notice of forfeiture pursuant to 18 U.S.C. §§ 981, 982 and 28 U.S.C. § 2461(c).

2.      Notice is hereby given of 18 U.S.C. §§ 981, 982 and 28 U.S.C. § 2461(c).  Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including, but not limited to 18 U.S.C. §§ 981, 982 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C).

The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a.      All property which constitutes or is derived from proceeds of the violations set forth in this Information;

b.      All property involved in such violations or traceable to property involved in such violations; and

c.      If, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant's to the extent of the value of the property described in (a) and (b).

The following property is subject to forfeiture on one or more grounds stated above:  a forfeiture money judgment in the amount of approximately $42,250.00, such amount constituting the proceeds of the violations set forth in this Information.

WILLIAM S. THOMPSON
United States Attorney

By:

KATHLEEN ROBESON
Assistant United States Attorney